Melanie L. Cyganowski, Esquire
Otterbourg P.C.
230 Park Avenue
New York, NY 10169-0075
Tel: 212-661-9100

mcyganowski@otterbourg.com

Scott Michael Hare, Esquire
Proposed Special Counsel to Blue Dog at 399 Inc.
437 Grant Street – Suite 1806
Pittsburgh, PA 15219
(412) 338-8632

scott@scottlawpgh.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re                                                                        Chapter 11

BLUE DOG AT 399 INC.,                                      Case No. 15-10694-mew

                                           Debtor.
---------------------------------------------------------x
BLUE DOG AT 399 INC.,

                                       Plaintiff,                  Adv. Pro. No. 18-_____

       -against-

SEYFARTH SHAW, LLP and
RALPH BERMAN,

                                       Defendants.
---------------------------------------------------------x

## ADVERSARY COMPLAINT

Plaintiff Blue Dog at 399 Inc. ("**Blue Dog**" or the "**Debtor**"), by its attorney, Scott Michael Hare, Esquire, as and for its complaint against Defendants Seyfarth Shaw, LLP ("**Seyfarth**") and Ralph Berman ("**Berman**"), alleges the following:

**INTRODUCTION**

1. On March 24, 2015, the Debtor commenced in this Court a voluntary case under chapter 11 of the Bankruptcy Code.

2. The Debtor brings this action seeking damages for negligence and other claims against its former special litigation counsel, Seyfarth Shaw, LLP and the individual lawyer who represented it, Ralph Berman, in an adversary proceeding pending in this chapter 11 case, titled *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC, Adv. Pro No. 15-01097-mew* (the "**Landlord Action**").

**JURISDICTION, VENUE AND PARTIES**

3. This adversary proceeding is brought pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

5. Venue over this adversary proceeding resides in this Court pursuant to 28 U.S.C. § 1409(a).

6. Subject-matter jurisdiction, personal jurisdiction over the Defendants and venue are further proper in this District pursuant to this Court's Order dated July 5, 2017 [Docket No. 109 in the Debtor's lead case, No. 15-10694-mew, and Docket No. 76 in the Landlord Action, Adv. Pro No. 15-01097-mew], in which this Court expressly retained jurisdiction "over any and all disputes arising out of or relating to this Order or to Seyfarth's retention by the Debtor."

7. The Debtor consents to the entry of final orders or judgment by the bankruptcy court.

8. The Plaintiff is a New York corporation and is the Debtor herein.

9. Defendant Seyfarth Shaw, LLP is a New York limited liability partnership with a principal place of business located at 620 Eighth Avenue, New York, NY 10018-1405.

10. Defendant Ralph Berman is an attorney licensed to practice law before this Court and in the State of New York. Berman was counsel to the Seyfarth firm during the events described herein.

## **FACTS**

### A. **Background and Underlying Adversary Proceeding**

11. Blue Dog is a tenant in a building at 399 Park Avenue, New York, NY, pursuant to a ten-year lease with BP 399 Park Avenue LLC (the "**Landlord**") dated January 1, 2012 (the "**Lease**").

12. A dispute arose between Blue Dog and the Landlord regarding various Lease terms, as a result of which the Landlord declared that Blue Dog was in default of the Lease and purported to cancel and terminate the Lease. (Blue Dog denies that it was in material breach, denies that it failed to cure any alleged breach, and denies that the Landlord was entitled to declare a default or cancel and terminate the Lease.)

13. As a result of the ongoing and unresolved landlord-tenant dispute, Blue Dog commenced the Landlord Action, pursuant to which Debtor asserts claims for declaratory judgment, wrongful eviction, breach of lease and breach of the implied covenant of good faith and fair dealing, and seeks damages, treble damages pursuant to Section 853 of the New York Real Property and Proceedings Law, and injunctive relief.

14. On February 1, 2016, after denying the Landlord's motion to dismiss the complaint, this Court issued a Joint Pretrial Scheduling Order [Docket No. 19 in the Landlord Action] directing, *inter alia*, that "All affirmative expert reports shall be delivered by April 21, 2016, with depositions of those experts to be taken and completed by May 5, 2016," and that "All responding expert reports shall be delivered by May 12, 2016, with depositions of those experts to be taken and completed by May 26, 2016." The Joint Pretrial Scheduling Order further required discovery

to be completed no later than May 26, 2016, unless "extended by order of the Court for cause shown."

15. By Amended Joint Pretrial Scheduling Order dated April 8, 2016 [Docket No. 20 in the Landlord Action], this Court amended the original scheduling order to require that "All affirmative expert reports shall be delivered by May 19, 2016, with depositions of those experts to be taken and completed by June 2, 2016," and that "All responding expert reports shall be delivered by June 9, 2016, with depositions of those experts to be taken and completed by June 23, 2016." As before, the Amended Joint Pretrial Scheduling Order required discovery to be completed by the stated deadline (June 23, 2016) unless "extended by order of the Court for cause shown."

### B. Seyfarth Appears and Cripples the Underlying Litigation

16. The February 1, 2016 Joint Pretrial Scheduling Order [Docket No. 19 in the Landlord Action] additionally memorialized "The Plaintiff reserves the right to make application, at any time prior to the Final Pretrial Order Date, to retain special counsel with respect to the adversary proceeding consistent with representations made in the application to employ and retain Wollmuth Maher & Deutsch LLP as counsel for Blue Dog at 399 Inc., in the above-captioned Chapter 11 case and consistent with the Order entered granting said application." The application to employ and retain Wollmuth Maher [Docket No. 17 in the Debtor's lead case], disclosed and anticipated the possible future retention of Seyfarth as special litigation counsel.

17. Consistent with the disclosure and reservation reflected in the Wollmuth Maher retention application, and the February 1, 2016 Joint Pretrial Scheduling Order in the Landlord Action, Seyfarth filed an Application of the Debtor for Entry of an Order Authorizing Employment and Compensation of Seyfarth Shaw, LLP as Special Litigation Counsel for the Debtor and Debtor-in-Possession *Nunc Pro Tunc* to the Application Date Pursuant to Bankruptcy Code Sections

-4-

327(e) and 328 and Rule 2014 of the Federal Rules of Bankruptcy Procedure [Docket No. 60 in the Debtor's lead case], by which Seyfarth sought to represent Blue Dog in the Landlord Action.

18. In support of the Seyfarth retention application, Seyfarth attached an engagement letter addressed to Blue Dog [Docket No. 60-2 in the Debtor's lead case]. The Seyfarth engagement letter expressly provides, *inter alia*, that the firm's client is Blue Dog, that the firm agrees to represent Blue Dog as special litigation counsel in the Adversary Proceeding filed at Adv. No. 15-1097 (to-wit, the Landlord Action), that Blue Dog would be "represented principally" in the adversary by, among others, Mr. Berman, counsel to the firm, and that Seyfarth would be paid for its efforts (at rates hovering near and above $1,000 per hour) exclusively by a principal of Blue Dog, and not by Blue Dog itself.

19. This Court approved the Seyfarth retention application by order dated June 13, 2016 [Docket No. 67 in the Debtor's lead case].

20. By letter dated July 15, 2016 [Docket No. 22 in the Landlord Action], Seyfarth, identifying itself as special litigation counsel to Blue Dog in the Landlord Action, asked this Court to schedule a telephone conference at its earliest convenience "to address the refusal" of the Landlord "**to abide by its commitments** and produce necessary discovery [emphasis added]." Seyfarth specifically objected to the Landlord's "refusal to produce witnesses, its non-cooperation and other delay tactics," which reportedly precluded Blue Dog from completing the depositions of fact witnesses. As a result of these discovery delays, Seyfarth requested that this Court extend the deadline for discovery and pretrial submissions. In passing, Seyfarth also requested "a short additional time for expert discovery," without mentioning that the deadline to serve expert reports had already elapsed some two months earlier.

21. As requested in the July 15, 2016 letter, the Court held a telephonic hearing on the discovery dispute on July 19, 2016, *see* Hearing Transcript [Docket No. 28 in the Landlord Action].

During the hearing, Mr. Berman requested "an extra couple of weeks to try to get these [depositions] done so that we can do our expert reports and get this thing ready for trial." Hearing Transcript, p. 5, lines 10-12. In response, counsel for the Landlord argued, *inter alia*, that the discovery deadline had already closed, that weeks had passed by during which he heard nothing from Berman, and that in his view, the burden fell upon Seyfarth to move the Court to extend (*i.e.*, reopen) discovery, which he would not oppose. *See generally* Hearing Transcript, pp. 6-8.

22. The Court extended the deadline to complete discovery until August 10, extended the deadline for pretrial submissions to August 18, and unambiguously cautioned the parties "I won't make any other changes to the schedule. We will have our final pretrial on the 18th and we will then set a trial date. Okay?" Hearing Transcript, p. 8. In response, Mr. Berman again raised the issue of expert reports, requesting "once we do finish with fact witnesses, there was a period of time for the exchanging of expert reports and expert depositions. I thought we could still accommodate that. ***That's a fairly important part of our case*** [emphasis added]." Hearing Transcript, p. 9, lines 1-5. This Court rejected Berman's professed rationale as "utter nonsense," admonishing that "There's no reason why you can't get your experts done within the normal discovery schedule or why they have to wait until the fact witnesses are done. So you should have been working on that already." Hearing Transcript, p. 9, lines 11-14. Nonetheless, this Court granted the requested relief and extended expert discovery to August 10, warning once again "I'm not going to extend it any further." Hearing Transcript, p. 9, lines 15-16. Berman acknowledged "Very good, Your Honor." Hearing Transcript, p. 9, line 17.

23. Despite the fact that Seyfarth allowed discovery to close once already without attending to its expert reports, despite its finger-wagging rebuke of the Landlord's counsel for perceived "delay tactics" and a refusal to "abide by its commitments," despite its concession that expert reports are "a fairly important part of our case," and despite the Court's repeated

-6-

admonition that such reports and depositions would be due by August 10, *with no further extensions*, Seyfarth once again let the deadline pass without serving a single expert report.

**C.    Seyfarth's Negligence Comes to Light**

24.    After discovery closed for the second time, on September 30, 2016, the Landlord filed a motion for summary judgment [Docket No. 35 in the Landlord Action].

25.    On November 30, 2016, Seyfarth filed a response in opposition to the motion for summary judgment on behalf of Blue Dog [Docket No. 45 in the Landlord Action]. Attached to the response in opposition, Seyfarth filed and served, for the first time, the declarations (without expert reports) of two expert opinion witnesses, Dean Stracuzza [Docket No. 45-3 in the Landlord Action] and Lamar Jermaine Russell [Docket No. 45-5 in the Landlord Action].

26.    Promptly thereafter, by letter dated December 2, 2016 [Docket No. 47 in the Landlord Action], counsel for the Landlord objected to the submission of expert declarations from two undisclosed opinion witnesses who were never previously identified as required by Fed. R. Civ. P. 26(a)(2)(A), and whose reports were due (on extension) by August 10, 2016, yet were never produced as required by Fed. R. Civ. P. 26(a)(2)(B). The Landlord objected that the "last-minute submission by the debtor of declarations by two previously undisclosed expert witnesses, without having ever (much less timely) provided the Landlord with required expert reports is patently unfair and violates this Court's deadlines for expert disclosures." For this reason, the Landlord requested a conference to consider a motion to strike, and further requested that Blue Dog "be barred from offering the Russell and Stracuzza declarations, and from presenting any other expert witness testimony whatsoever in this case."

27.    As requested, the Court held a hearing on the motion to strike on December 15, 2016, *see* Hearing Transcript [Docket No. 52 in the Landlord Action]. After reviewing the expert disclosure requirements in the Federal Rules and the Court's own scheduling orders, and the fact

that Seyfarth failed to comply with those requirements, the Court asked Mr. Berman why it should not grant the motion to strike and exclude the proffered declarations. Although Berman "apologized" three times for having "misunderstood" the Court's orders, he was unable to articulate any colorable excuse for having failed to identify his experts and having failed to produce timely expert reports as required. Instead, he attempted to camouflage those failures by reference to unrelated discovery proceedings. The Court quickly saw through this deceit:

> THE COURT: Where do you get the idea that because I allowed a little bit of other fact discovery to go forward that that automatically extended your date to even identify who your proposed experts would be?
>
> MR. BERMAN: Well, Your Honor, if we misunderstood, I do apologize, but we took it to be extended as well because it wasn't just a little bit of extra discovery. This was discovery that sort of went to the heart of the case and really had a great deal to do with –
>
> THE COURT: It didn't have anything to do with what your two experts have said.
>
> * * *
>
> THE COURT: Just because there is factual discovery on an issue going underway has nothing to do with whether your experts could and should have been identified to talk about what the general practices in the state of New York and City of New York were. ***In fact, one of your experts says that he was looking at this issue last March. So what is the possible excuse for your delay? And don't just tell me that you think that I didn't require it. I mean, you never identified that you were postponing your experts, you just -- looks to me like you just tried to hide them***.
>
> * * *
>
> THE COURT: I never extended the time for expert discovery, and they never got to take the depositions because you never told them you were planning to use these people. So what did you think was going to happen? Did you think I was going to re-open the discovery again? I don't see how under the circumstances of this case you could think that my prior discovery rulings where I was very explicit that I was only authorizing specific items to go forward, how could you think that that gave you time to delay the revelations of who your experts were? Because that, in effect, would have taken away from them, the right to do to the discovery that explicitly was contemplated in the pretrial.

-8-

\* \* \*

THE COURT: [Quoting from the transcript of the July 19, 2016 Hearing Transcript, during which the Court found Seyfarth's position to be "utter nonsense."] What part of that statement could you possibly interpret as an extension of your time to disclose your experts?

\* \* \*

THE COURT: ***How could you possibly interpret what I just read as meaning that you would make your expert disclosures after the fact witnesses? I said exactly the opposite. I described the attitude that lawyers take, as though experts can't possibly proceed until all fact discovery is finished, I described it explicitly as nonsense. And then in the next sentence as utter nonsense***. And I said very explicitly, there's no reason why you can't get your experts done within the normal discovery schedule or why they have to wait until the fact witnesses are done. You should have been working on that already so you can finish that, also, by August 10. Not that it would somehow wait until the fact discovery. It couldn't have been more explicit to you that I was not agreeing with any suggestion that the experts would just automatically be postponed until every last shred of potential fact discovery was done.

\* \* \*

THE COURT: [Responding to Berman's *tu quoque* argument that the Landlord had likewise filed untimely expert reports.] They did not present anything that they purported to be an expert. You called it an expert. You called it a legal expert. ***I am not going to let you bootstrap your characterization of their proposed witness and whether it is admissible into a flagrant violation by you of my disclosure requirements and the disclosure requirements of the rule. Far from showing an actual justification or substantial justification here, you seem to have proceeded in utter disregard of the explicit requirements of the pretrial order***. Quite frankly, I didn't remember, and I am glad you gave me this transcript, because I didn't remember being – having been as explicit as I was during the discovery conferences about the expert requirements, but having met -- having reread it now, I'm more confident than ever that ***all you did here was try to game the system***.

And, you know, there's two things that have been going on here that I am very disturbed about. I re-opened this case because I thought that you had raised an issue that hadn't been ruled on, and I had a conference with both of you, I think 13 months ago, about whether we should try the case here, where you both thought that we could have the case ready for trial within three months, which would have been in everybody's interest because the issues were fairly straightforward.

Instead, I've had -- you both agreed on a longer discovery schedule, and I've had an inordinate number, for a case of this kind and size, of discovery

> conferences. At your request, I have been quite hard on the landlord for what I perceived as instances in which it wasn't conducting discovery in the way I expected in terms of the 30(b)(6) witness, who hadn't been prepped in terms of document production, in terms of whether witnesses had knowledge only to show up with having filed affidavits. And, if anything, I've bent over backwards to make sure discovery on those points were open. ***And I am going to hold you to the same standard, and, quite frankly, your failure to identify these witnesses is far more flagrant than any of the conduct you complained that the landlord has engaged in, and far from have having a justification, it is utterly unexplained***. I'm going to exclude them. I have to exclude them under Rule 37. So they will not be part of the record for summary judgment. You will not be allowed to use them at trial, if we have a trial. Okay?

Hearing Transcript [Docket No. 52 in the Landlord Action], p. 5, lines 13-23; p. 6 line 16; p. 7, line 1; p. 7, lines 5-16; p. 10, lines 2-19; p. 11, lines 5-21; p. 12, line 7; p.13, line 23 (emphasis added).

28.  During this lengthy colloquy examining his unexcused failure to make timely expert disclosures, Mr. Berman conspicuously failed to disclose to the Court that Seyfarth had also retained (at considerable expense) a *third* expert, Gary Levy, CPA, the Hospitality Industry Practice Leader of CohnReznick LLP, 1301 Avenue of the Americas, New York, NY 10036, to prepare a report and offer expert testimony as to Blue Dog's damages. Although Seyfarth failed to identify Mr. Levy and failed to serve any report (timely or otherwise), the report prepared by Mr. Levy at the firm's behest opined that Blue Dog suffered lost profits in the amount of $4.5 million for the three-year period from March 1, 2015 through February 28, 2018. (Of course, under the parties' ten-year lease, Blue Dog's damages would continue to accrue through at least 2022.) Not coincidentally, Seyfarth recited precisely this damage figure - albeit without the benefit of any supporting expert report or testimony - in the Joint Pretrial Order (Proposed) and Revised Joint Pretrial Order (Proposed) later filed at Docket Nos. 54 and 60 in the Landlord Action.

29.  By order dated December 19, 2016 [Docket No. 51 in the Landlord Action], the Court struck the expert witness declarations filed by Seyfarth and barred Blue Dog from using

-10-

those individuals as expert witnesses in connection with any motion, hearing or trial in the Landlord Action. The Court additionally scheduled the Landlord Action for trial on January 27, 2017, approximately one month later.

30.     On January 13, 2017, Seyfarth filed a Motion *in Limine* [Docket No. 53 in the Landlord Action] to preclude the Landlord from offering certain evidence at trial. On January 20, 2017, the Landlord filed its Response [Docket No. 55 in the Landlord Action], including its own request to strike witnesses who had never been identified until just days earlier. *See* Landlord's Response, pp. 32-35 [Docket No. 55 in the Landlord Action]. Specifically, the Landlord recited that on January 16, 2017, Seyfarth identified, for the first time, three new witnesses that were never before disclosed, followed by the identification of a fourth undisclosed new witness on January 17, 2017. The Landlord objected that the newly-disclosed witnesses were offered to provide expert testimony in violation of the Court's December 19, 2016 Order barring Blue Dog from calling expert witnesses at trial, a tactic the Landlord described as an "eve-of-trial … end-run around this Court's order."

31.     The Court convened a hearing on the dueling motions *in limine* on January 25, 2017. *See* Hearing Transcript [Docket No. 61 in the Landlord Action]. During the hearing, the Court determined, once again, that Seyfarth failed to provide timely expert disclosures and would therefore be barred from offering any experts at trial. In so doing, the Court rejected Berman's effort to disguise the newly-disclosed witnesses as simple fact witnesses:

> THE COURT: All right. I mean, move to the other issue you raised, that apparently there's some witnesses you never heard of before?
>
> MR. SCHMIDT: Yes, Your Honor. ***It appears to us that there seems to be sort of an end around out of the expert exclusion order that you have entered in this case***.
>
> \* \* \*

-11-

>MR. SCHMIDT: Your Honor, these are not fact witnesses. ***This is really an end around an expert witness, and what he just described is actually expert witnesses***. None of these witnesses have any idea or firsthand knowledge as to what was going on in the debtor's place. ***It was simply by extrapolation, just to provide expert testimony here***.
>
>\* \* \*
>
>THE COURT: Well, if you're offering these witnesses to show a prevailing practice in the community or a prevailing practice of the Health Department, ***how is that not expert testimony***?
>
>\* \* \*
>
>THE COURT: Well, there's only two possibilities; one is that you're just offering it so that they can say, well, this happened to me -- which I don't really know that that's relevance as to what the law actually required; or you want to offer it to say that they, by virtue of their experience, have sufficient experience and familiarity with this issue to be able to testify as to what the prevailing legal requirements are and how they were applied by the Health Department and the fire department, which –
>
>MR. BERMAN: I'm sorry, Your Honor, I didn't catch that.
>
>THE COURT: The other alternative is that you're offering them to say that by -- that they have sufficient experience to enable them to testify as to how, on a prevailing basis, the Health Department or fire department viewed these issues and what the actual requirements and experience were and ***that, by its definition, is expert testimony***.
>
>\* \* \*
>
>THE COURT: Yeah, no, it seems to me that as I say, there's only two possibilities. Either that's just hey, this is what happened in my case, in which case I don't know that that really proves anything, or ***it's just expert testimony that you're unwilling to call expert testimony, and I'm not going to allow it. And if that leaves you with a difficulty of proof, that's your own fault, for not designating experts when you should have***.

Hearing Transcript [Docket No. 61 in the Landlord Action], p. 15, lines 2-7; p. 16, lines 8-14, 20-23; p. 17, lines 6-24; p. 18, lines 10-17 (emphasis added).

32.     Prior to trial on January 27, 2017, the Court directed the parties to return to mediation, which occurred on February 8 and 10, 2017.

33. In the meantime, on February 3, 2017, the parties filed a Revised Joint Pretrial Order (Proposed) [Docket No. 60 in the Landlord Action] in which, as indicated above, Seyfarth reiterated Blue Dog's $4.5 million damage claim.

34. The docket remained quiet for the next two months until April 14, 2017, when Seyfarth filed a Motion for Leave to Withdraw [Docket No. 62 in the Landlord Action; Docket No. 79 in the Debtor's lead case], seeking Court permission to abandon its client outright.

### D.  **Seyfarth Holds Blue Dog Hostage for its Own Financial Benefit**

35. As recited in detail above, Seyfarth negligently, deceptively and repeatedly failed to identify experts and produce timely reports in the Underlying Litigation, leaving Blue Dog stranded without experts as to either liability or damages. Having thus materially impaired Blue Dog's opportunity to prove its case, Seyfarth then contrived to extricate itself from the litigation altogether and, at the same time, extract a ransom in the form of further payment of attorneys' fees for its "services."

36. By its Motion for Leave to Withdraw, Seyfarth asked the Court to allow it not only to withdraw as counsel, but also - in a plot to extract from Blue Dog another $594,865.99 in fees - to assert a retaining lien against Blue Dog's litigation files and to assert a charging lien against any recovery (monetary or otherwise) that Blue Dog might realize in the continuing litigation, *despite the fact that the firm's engagement letter* [Docket No. 60-2 in the Debtor's lead case] *and retention application* [Docket No. 60 in the Debtor's lead case] *both expressly provided that Blue Dog would not be responsible for the payment of any fees*.

37. Blue Dog responded by filing an Application asking the Court to Deny, in Part, the Motion for Leave to Withdraw [Docket No. 63 in the Landlord Action; Docket No. 81 in the Debtor's lead case]. In its response, Blue Dog recounted that Seyfarth missed critical deadlines in the Landlord Action, impacting not only the prosecution of the case (perhaps irreparably) but also

the lawyer-client relationship. For this reason, Blue Dog agreed that it was critical for it to change counsel in an effort to salvage the case. Conversely, Blue Dog opposed the Motion for Leave to Withdraw to the extent it sought to extract "further exorbitant and unreasonable compensation," impose any liens, or otherwise blockade Blue Dog's efforts to prepare the case for trial.

38.    Echoing Blue Dog's objections, the United States Trustee filed a separate Objection to Aspects of the Motion of Seyfarth Shaw, LLP to Withdraw as Counsel [Docket No. 88 in the Debtor's lead case], in which the Trustee opposed the firm's request to enforce an alleged lien (which would not only be "inappropriate," but also was never disclosed in the retention application) and objected to any request to seek fees from the estate, contrary to the terms of the retention order. Among other concerns, the United States Trustee noted that the firm's effort to extract fees from Blue Dog created an undisclosed conflict of interest, violated the automatic stay, and constituted an improper priming lien at odds with the Bankruptcy Code.

39.    Seyfarth filed a Reply to the Objections of the United States Trustee [Docket No. 67 in the Landlord Action; Docket No. 93 in the Debtor's lead case] in which it argued that its efforts to assert a lien were "reasonable," that the conflict-of-interest concerns were "absurd," that Blue Dog "has no right" to possess its own files, and that it should be permitted to retain the Blue Dog files and thereby further hobble the litigation. (In a final slap at the troubling ethical issues arising from its self-serving hostage-taking, Seyfarth further argued that the objections of the United States Trustee were "untimely.")

40.    Perhaps recognizing that it was likely to lose on the existing record (particularly given its unambiguous engagement letter and retention application), Seyfarth then attempted to renegotiate the terms of its representation (*after the representation had ended*) by simultaneously filing an Application for Entry of an Order to Amend the Order Authorizing its Employment and Compensation [Docket No. 70 in the Landlord Action; Docket No. 99 in the Debtor's lead case]

-14-

and a Rule 9019 Motion to Approve the Settlement Agreement [*sic*] Resolving the Motion for Leave to Withdraw and Objections Thereto [Docket No. 71 in the Landlord Action; Docket No. 99 in the Debtor's lead case]. In this dual filing, Seyfarth argued, *inter alia*, that Blue Dog and the United States Trustee agreed to amend the retention order to obligate Blue Dog to compensate the firm for its legal fees as an administrative expense and that it could continue to withhold the litigation files until seven days after orders approving the settlement and amending the retention order became final.

41.     The Court convened a hearing on the Seyfarth motions on June 23, 2017, *see* Hearing Transcript [Docket No. 78 in the Landlord Action]. Put briefly, the Court rejected Seyfarth's claim that there was a final binding settlement, rejected its after-the-fact request to modify the terms of its engagement, rejected the request to receive payment from Blue Dog, and rejected the argument that the firm had any right to retain the files or otherwise assert a retaining lien or a charging lien. The Court formally docketed its ruling as a Bench Decision dated July 21, 2017 [Docket No. 77 in the Landlord Action].

42.     By Order dated July 5, 2017 [Docket No. 76 in the Landlord Action; Docket No. 109 in the Debtor's lead case], the Court (i) authorized Seyfarth to withdraw as counsel, on the condition that it surrender all associated litigation files within five days; (ii) ordered that the withdrawal would not be effective unless and until the files were completely turned over; (iii) ordered that the Court would retain jurisdiction over Seyfarth with regard to, *inter alia*, any and all disputes relating to Seyfarth's retention by the Debtor; and (iv) ordered that the Motion for Leave to Withdraw, the Motion to Approve Settlement and the Motion to Amend the retention order were otherwise *denied* in all respects.

**E.    Debtor Has Already Suffered Damages**

43.    Lest Seyfarth try to argue that Blue Dog has not - or not yet – suffered, and will not suffer, damages from its documented negligence while the Landlord Action remains pending, compensable damages have already accrued and continue to accrue, whatever the eventual outcome of the Landlord Action, based on which this action is now ripe. Without limitation, the prosecution of the Landlord Action has been substantially delayed by Seyfarth's negligence, postponements and withdrawal, as a direct result of which Blue Dog has been further delayed in recovering possession of the leased premises. Further damages may surface as the Landlord Action moves forward, including the damages already identified herein.

**F.    Seyfarth is Estopped from Contesting the Case-Within-the-Case**

44.    This is an action for legal malpractice. Lest Seyfarth now try to argue that its documented negligence was harmless because Blue Dog's case was baseless or unwinnable (reminiscent of its argument that the United States Trustee's objections should be ignored as "untimely"), it is estopped from disputing the merits of the Landlord Action in this action.

45.    By way of example, without limitation, in its Retention Application [Docket No. 60 in the Landlord Action], Seyfarth represented to the Court, subject to the requirements of Fed. R. Civ. P. 11 and Bankr. R. 9011, that Blue Dog entered into a ten-year lease agreement dated January 1, 2012, that it spent over two years and over $1.6 million carrying out the renovations and build-out at the premises necessary to open and operate a café, that it spent more than $500,000 paying rent, that the Landlord wrongfully evicted and dispossessed Blue Dog of the premises, that Seyfarth has considerable experience and knowledge in the field of commercial landlord-tenant disputes and related litigation and is well qualified to represent Blue Dog in the litigation, that it had been involved in the underlying transactions since before the bankruptcy

filing, and that the employment of Seyfarth to prosecute the Landlord Action would be in the best interests of Blue Dog and the estate.

46. After its approval as special counsel, Seyfarth continued to endorse the validity of the Landlord Action, both implicitly and explicitly, by its continued representation. By way of further example, without limitation, in its Opposition to the Defendant's Motion for Summary Judgment [Docket No 45 in the Landlord Action], Seyfarth represented to this Court, subject to the requirements of Fed. R. Civ. P. 11 and Bankr. R. 9011, that Blue Dog had resolved all old disputes with the Landlord, that the Lease had been reinstated, that it was current on its rent, that it was ready, willing and able to open for business, that it had satisfied all required regulatory prerequisites and was legally entitled to open, and that the Landlord wrongfully obstructed it from opening.

47. By way of further example, without limitation, in the Joint Pretrial Order (Proposed) [Docket No. 54 in the Landlord Action] and Revised Joint Pretrial Order (Proposed) [Docket No. 60 in the Landlord Action], Seyfarth represented to this Court, subject to the requirements of Fed. R. Civ. P. 11 and Bankr. R. 9011, that Blue Dog suffered monetary damages in the amount of $4.5 million as the result of the Landlord's unlawful conduct.

48. By way of further example, and without limitation, in its Rule 9019 Motion to Approve the Settlement Agreement [Docket No. 71 in the Landlord Action; Docket No. 99 in the Debtor's lead case], Seyfarth represented to this Court, subject to the requirements of Fed. R. Civ. P. 11 and Bankr. R. 9011, that its legal services in prosecuting the Landlord Action conferred a benefit upon Blue Dog and the estate, *see* 11 U.S.C. § 330(a)(3), that "Seyfarth provided service of substantial value to the Debtor's estate," and that payment by Blue Dog for those services would be in the best interests of the estate.

49. In short, Seyfarth repeatedly endorsed every element of the claims against the Landlord in the Landlord Action, including damages of not less than $4.5 million and treble damages calculated thereon. It is now therefore estopped from disputing or disavowing the underlying claims.

## FIRST CLAIM FOR RELIEF
**(Negligence/Legal Malpractice)**

50. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 51 as if fully set forth herein.

51. Defendants had a duty to use ordinary care in prosecuting the Landlord Action, and were specifically required (without limitation), to take all required steps necessary to preserve and advance the prosecution of Blue Dog's claims and causes of action.

52. More specifically, and without limitation, Defendants were required to comply with all scheduling orders and other deadlines issued by the Court so as not to waive or impair Blue Dog's claims and causes of action.

53. Defendants breached their duties by, *inter alia*, failing to take all required steps necessary to preserve and advance the prosecution of Blue Dog's claims and causes of action and by failing to comply with all scheduling orders and other deadlines issued by the Court so as not to waive or impair Blue Dog's claims and causes of action.

54. Defendants' decision to ignore the Court's deadlines governing expert reports ("a fairly important part of the case") is not within the purview of "litigation strategy," and, as this Court has already found, was not justified or excusable. As such, this failure constitutes actual and material negligence.

55. As a result of Defendants' negligence, by Defendants' own calculation, the Debtor sustained damages in an amount of not less than $13,500,000.

**SECOND CLAIM FOR RELIEF**
**(Treble Damages Pursuant to New York Judiciary Law § 487)**

56. Plaintiff repeats and realleges the allegations contained in paragraphs 1 - 54 as if fully set forth herein.

57. Article 15, Section 487 of the New York judiciary law provides as follows:

An attorney or counselor who:

1. ***Is guilty of any deceit*** or collusion, ***or consents to any deceit or collusion, with intent to deceive the court or any party***; or,

2. ***Wilfully delays his client's suit with a view to his own gain***; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,

Is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, ***he forfeits to the party injured treble damages, to be recovered in a civil action***.

NY CLS Jud § 487 (emphasis added).

58. Defendants engaged in and practiced deceit, with the intent to deceive both their client, Blue Dog (a party to the Landlord Action), and the Court, and willfully delayed the prosecution of the Landlord Action with a view to their own gain, and in so doing became liable for treble damages under Section 487.

59. The conduct complained of herein occurred while the Landlord Action was actually pending.

60. The conduct complained of herein occurred in the course of, and in connection with, the Landlord Action.

61. As a result of Defendants' conduct complained of herein, Defendants forfeit to Blue Dog, and Blue Dog is entitled to recover, treble damages in an amount of not less than $40,500,000.

WHEREFORE, Blue Dog respectfully requests entry of judgment on its Complaint in its favor and against Defendants, jointly and severally, as follows:

(i) Awarding Blue Dog its actual damages in an amount to be determined at determined at trial and not less than $13,500,000;

(ii) Determining and declaring that the Defendants have forfeited to Blue Dog treble damages in an amount not less than $40,500,000, and directing the Defendants to remit such amount to Blue Dog;

(iii) Awarding Blue Dog all fees and costs, including attorneys' fees, associated with this action; and

(iv) Granting Blue Dog such other and further relief, both at law and in equity, as the Court may deem just and proper.

Dated: June 19, 2018

                LAW OFFICE OF SCOTT M. HARE

                By:    /s/ Scott M. Hare
                      Scott M. Hare
                      1806 Frick Building
                      437 Grant Street
                      Pittsburgh, PA 15219
                      (412) 338-8632
                      scott@scottlawpgh.com
                      Pa. I.D. No. 63818
                      Michigan P52081

Proposed Special Counsel to Blue Dog at 399 Inc.