UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                                  :
                                                                            :     Chapter 11
BLUE DOG AT 399 INC.,                                       :
                                                                            :     Case No. 15-10694 (MEW)
                                      Debtor.                      :
------------------------------------------------------------x
BLUE DOG AT 399 INC.,                                       :
                                                                            :
                                      Plaintiff,                   :
                                                                            :
        -against-                                                    :     Adv. Pro. No. 19-01029 (MEW)
                                                                            :
SEYFARTH SHAW, LLP and RALPH             :
BERMAN,                                                            :
                                                                            :
                              Defendants/Third           :
                              Party Plaintiffs,            :
                                                                            :
        -against-                                                    :
                                                                            :
ELIZABETH SLAVUTSKY,                                 :
                                                                            :
                      Third Party Defendant.         :
------------------------------------------------------------x

**BENCH DECISION (1) DENYING REQUEST FOR ADJOURNMENT, (2) GRANTING
MOTION TO ENJOIN ELIZABETH SLAVUTSKY FROM PURSUING ACTIONS
THAT BELONGED TO THE ESTATE AND THAT WERE TRANSFERRED TO THE
LIQUIDATING TRUSTEE, AND (3) ENJOINING THE PURSUIT OF COMPULSORY
<u>COUNTERCLAIMS IN COURTS OTHER THAN THIS COURT</u>**

**HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE**

On February 8, 2022 this Court heard argument on the pending motion [ECF No. 339] by

Clingman & Hanger Management Associates, as Liquidating Trustee (the "<u>Liquidating Trustee</u>")

of the Liquidating Trust of Blue Dog at 399 Inc. (the "<u>Liquidating Trust</u>") in the above-captioned

chapter 11 case of Blue Dog at 399 Inc. ("<u>Blue Dog</u>") for the entry of an order (i) enforcing the

terms of the confirmed plan of reorganization in Blue Dog's chapter 11 case (the "<u>Plan</u>") [ECF

1

No. 257] and the order of this Court that confirmed the Plan (the "Confirmation Order") [ECF No. 271], (ii) declaring Elizabeth Slavutsky and her counsel, J. Benton Stewart, Esq. and his law firms in contempt of the Confirmation Order by reason of their commencement, in Florida, of an action by Ms. Slavutsky against Seyfarth Shaw, LLP, Ralph Berman and Adrian Zuckerman (Case No. 2021-004558-CA-01) (the "Florida Action"), and (iii) imposing sanctions on Ms. Slavutsky and her counsel. The Court dictated its bench decision at the conclusion of the February 8 hearing.

This formal Bench Decision reflects corrections or clarifications to the transcript of the Court's dictated decision, and it constitutes the official decision of the Court with respect to the pending motion and with respect to a request for an adjournment that was made.

### The Request for an Adjournment

The motion that is scheduled for hearing was filed on December 20, 2021. The motion seeks to enjoin Ms. Slavutsky from pursuing claims in an action that she filed in the Florida state court. The movant claims that Mr. Slavutsky's claims in Florida really are claims that belonged to Blue Dog at 399, Inc., which was the Debtor in the case before me, and that now belong to the Liquidating Trust under the confirmed plan of reorganization of Blue Dog. They also contend that Ms. Slavutsky is interfering with estate assets and violating my prior orders by attempting to pursue the claims for her own benefit. They seek injunctive relief, which by rule is a request to which I am supposed to give priority and to consider on a reasonably expedited basis.

Notice of the motion was served on Elizabeth Slavutsky individually at four different addresses. It was also served on Kenneth Reynolds, who is counsel of record to Ms. Slavutsky in the main Blue Dog bankruptcy case, and on Stewart Law International, who acts as counsel to Ms. Slavutsky in the Florida Action. Stewart Law International also was admitted *pro hac vice* as counsel to Ms. Slavutsky in the pending adversary proceeding before me between the Liquidating

2

Trustee and the Seyfarth Shaw firm. The motion was served on Stewart Law International at three separate addresses, each directed to the attention of J. Benton Stewart II, as indicated by the certificate of service that is on file on the docket in this Court. [ECF No. 340].

On January 14, 2022, the Liquidating Trustee served a notice of an adjournment of the hearing date on its pending motion. [ECF No. 344]. The notice told the recipients that the objection deadline would be February 1 and that the hearing date would be February 8 at 10:00 a.m. Chambers was informed that the adjournment was done as a courtesy to Mr. Reynolds, who apparently is suffering from severe health issues and who had indicated a desire to file a motion to withdraw as counsel. The notice of adjournment was served on the same parties as the original notice of the motion. [ECF No. 347].

On January 17, 2022, Mr. Reynolds filed a formal motion to withdraw as counsel to Ms. Slavutsky. [ECF No. 346]. Mr. Reynolds filed a certificate of service showing that he had served the motion on Ms. Slavutsky. [ECF No. 348]. No objection to the Liquidating Trustee's motion was filed by the February 1 deadline. The Liquidating Trustee filed a certificate of no objection on February 3, 2022. [ECF No. 349]. Copies of that certificate were served upon Ms. Slavutsky, Mr. Reynolds and Mr. Stewart. [ECF No. 350].

Sometime in January 2022 – and I just do not recall the date – we rescheduled the February 8 hearings so that they would take place at 2:00 p.m. rather than at 10:00 a.m., and I asked my staff to advise the parties. We did so because I am co-teaching a class at Fordham Law School and that class is at 9:30 in the morning and required me to reschedule my Tuesday hearings to the afternoon instead of the morning.

It would take a little time to reconstruct which members of my staff spoke to which counsel. But I note that on February 2, 2022, counsel to the parties sent an email to chambers asking whether

3

Mr. Reynolds needed to appear at the scheduled hearing. The email noted that the hearing was scheduled for February 8 at 2:00 p.m. Copies of that email, which explicitly referenced the 2:00 time, were sent to Ms. Slavutsky and to Mr. Stewart. My law clerk, Jenna MacDonald, responded to this email stating that the matter would remain on the calendar, but that in light of his apparent health difficulties, Mr. Reynolds personally did not need to appear. Ms. MacDonald's response was sent to all of the parties to the original email including Ms. Slavutsky and Mr. Stewart.

On February 7, the Liquidating Trustee filed a notice of agenda for the scheduled hearing on February 8. [ECF No. 353]. It, too, stated that the hearing would be at 2:00 rather than 10:00.

Nobody filed an objection to Mr. Reynolds' proposed withdrawal, but at the same time apparently Ms. Slavutsky was unable to arrange for new bankruptcy counsel to take Mr. Reynolds' place. The Court expected and understood that Mr. Stewart would appear and would represent Ms. Slavutsky to the extent she had any opposition to the pending motion. As I have noted, I had already granted Mr. Stewart's *pro hac vice* application on December 9, 2020. [Adv. Pro. No. 19-01029, ECF No. 106].

This morning, Mr. Stewart contacted my chambers deputy, Jacqueline De Pierola, to indicate that he was on the telephone at 10:00. When Ms. DePierola informed him that the matter was scheduled for 2:00, Mr. Stewart indicated that he would reconnect at that time. Subsequently, however, Mr. Stewart sent a written communication to the parties, indicating that he would not appear at 2:00 and that he was unable to do so due to unspecified health problems of his own, and suggesting that due to his calendar he would not be available until the last week of March 2022.

I delayed the start of the hearing at 2:00 until Mr. Stewart could be contacted. My staff has attempted to contact him without much success, except that Ms. MacDonald was able to reach him

briefly by telephone. It was a very short call where he suggested he was at a medical appointment, and the call was then terminated.

Ms. Slavutsky is now on the call, which we have resumed at 3:00. She has indicated that she was informed of the time of the hearing correctly, yesterday, and that she had made some efforts to get new counsel, but has not been able to do so.

I should note that Ms. DePierola has now sent me the email that originally rescheduled this hearing. It was sent on February 1 and copied to Mr. Reynolds as counsel of record. That particular email was not sent to Mr. Stewart. But as I mentioned, on February 2 the new time was explicitly mentioned in an email that was sent to Mr. Stewart.

So I have a motion that was duly noticed, that was already adjourned once in contemplation of Mr. Reynolds' difficulties, that was very clear as to what the objection deadline was, in a matter where Ms. Slavutsky has counsel of record and where her other counsel, Mr. Stewart, has been admitted *pro hac vice*. I have received no timely request for an adjournment. I have heard really nothing about this until long after the objection deadline has passed. Quite frankly, enough time was provided and enough courtesy was provided with a prior adjournment so that new counsel could be arranged and so that existing counsel could consult with bankruptcy counsel to the extent necessary to enable a response to be filed. But no response was filed.

I am not going to grant additional time. I am absolutely not going to grant the equivalent of a "pocket veto" of the motion until late March 2022, or until new counsel decides that it is worth their while to come in and to appear. I think that would be a disservice to the Liquidating Trust, and I am simply not going to do it. [The Court then heard argument from the parties, including from Ms. Slavutsky on her own behalf.]

**Ruling on the Merits of the Motion**

Because this matter has such a long and tortured history, I spent some time yesterday reconstructing it by going through the docket. At the risk of overdoing the background, I am, before making my ruling, going to recite how we got to where we are.

The Blue Dog chapter 11 case was filed on March 24, 2015. The Debtor was named Blue Dog at 399 Inc. The attorneys for Blue Dog were the firm of Wollmuth Maher and Deutsch LLP. Ms. Slavutsky signed a declaration in support of various matters in connection with the filing and identified herself as the sole director and a shareholder of Blue Dog. The Statement of Financial Affairs that was filed on April 7, 2015 [ECF No. 7] stated that Ms. Slavutsky owned 80 percent of the equity of Blue Dog and that the YUHA Group owned 20 percent.

I note that the Schedule of Assets that was filed on April 7, 2015 [ECF No. 8], listed assets belonging to Blue Dog, and that the listed assets included claims against the landlord at 399 Park Avenue. Those were identified as claims belonging to Blue Dog and its estate.

On April 8, 2015, Blue Dog sought permission to retain the Wollmuth firm as its counsel. [ECF No. 9]. In paragraph 15 of the application, Blue Dog noted that it had agreed that Seyfarth Shaw would be retained as special counsel for purposes of litigation against the landlord. *Id.* at ¶ 15. Nine days later, on April 17, 2015, Blue Dog filed an adversary proceeding against the landlord, which was adversary proceeding 15-01097. Ms. Slavutsky was not a party to that litigation. The attorneys who filed the complaint on behalf of Blue Dog were the Wollmuth Firm, which was Blue Dog's main counsel in the bankruptcy case.

Although the Wollmuth retention application on April 8, 2015 had suggested that a separate application to employ Seyfarth Shaw might be made, no application for the retention of Seyfarth Shaw was made until more than a year later, on May 18, 2016, when Blue Dog filed an application

6

seeking permission to employ the Seyfarth Shaw firm as special litigation counsel. [ECF No. 60]. In that application, Blue Dog represented that Seyfarth had become involved in the matter prior to the bankruptcy filing and that Seyfarth had been retained "by the Debtor's principal, Elizabeth Slavutsky, prior to the Petition Date to render advice concerning rights under the Lease and the procedural and substantive basis for regaining possession of the Premises under the Lease." *Id.* at ¶ 18. Blue Dog stated that Seyfarth Shaw represented Ms. Slavutsky in a state court action that the landlord had commenced against Ms. Slavutsky as a guarantor of obligations allegedly owed by Blue Dog to the landlord. *Id.* at ¶ 19. Finally, Blue Dog proposed that although Seyfarth Shaw would be retained to provide services to Blue Dog in the litigation, Ms. Slavutsky would be solely responsible and personally liable for the payment of Seyfarth's fees and expenses. *Id.* ¶ 23.

Ms. Slavutsky submitted an affidavit dated May 16, 2016 in support of Blue Dog's application for permission to retain Seyfarth Shaw. [ECF No. 60, Exhibit C]. In that affidavit, Ms. Slavutsky acknowledged that Seyfarth was being retained to represent the Debtor, Blue Dog. *Id*. at ¶ 4. She also affirmed that "[i]n connection with the Firm's [Seyfarth Shaw's] representation as special litigation counsel for the Debtor as proposed in the application, the undivided loyalty of the firm is to its client, the Debtor." *Id*. at ¶ 7.

Blue Dog also submitted an engagement letter dated May 11, 2016 that governed its retention of Seyfarth Shaw. [ECF No. 60, Exhibit B]. The engagement letter was signed by Ms. Slavutsky on behalf of Blue Dog, and it was also signed by her separately in her personal capacity as evidence of her personal agreement to pay the firm's fees and expenses. *Id.* at p. 3. The third paragraph of the engagement letter stated explicitly that "[y]ou agree that our representation of the Debtor in this matter does not give rise to a lawyer-client relationship between our firm and any of the Debtor's officers, directors, shareholders, corporate affiliates, or subsidiaries." *Id.* at p. 1.

7

I entered an order on June 13, 2016 that approved the retention of Seyfarth Shaw. [ECF No. 67]. Seyfarth Shaw's retention continued until it ultimately made a motion for permission to withdraw as counsel on April 14, 2017. [ECF No. 79]. I granted that motion, after resolving some other issues, in an order dated July 5, 2017. [ECF No. 109]. Among other things, I held on that day that Seyfarth Shaw was required to turn over its files to Blue Dog and that Seyfarth had no right to assert a retaining lien on Blue Dog's files due to unpaid fees and expenses because, under the parties' arrangement, the files belonged to Blue Dog and Blue Dog had no responsibility for the payment of fees and expenses. [ECF No. 110]. I also denied Seyfarth Shaw's separate request to enforce a purported settlement agreement that had allegedly previously been reached. *Id.*

The litigation against the landlord continued thereafter, though much of the time was spent in a very long and continued set of mediation sessions. Meanwhile, on June 7, 2018, Blue Dog filed an amended list of its equity security holders. [ECF No. 127]. The new list stated that Ms. Slavutsky owned 51 percent of Blue Dog and that YUHA Group owned 49 percent. *Id.*

Blue Dog also made a motion on June 7, 2008 to retain the Otterbourg firm as new counsel in its bankruptcy case [ECF No. 124], and an additional motion seeking permission to borrow funds from an entity named D&D Funding II LLC ("D&D Funding"). [ECF No. 122]. I approved the retention of Otterbourg [ECF No. 151], but I identified problems with the proposed financing that needed to be fixed. The financing issue arose again at a hearing on October 10, 2018 that was principally devoted to other matters. During that hearing, Blue Dog's counsel informed me that the parties had negotiated a proposed agreement under which Ms. Slavutsky would sell her shares, representing about 51 percent of the total shares, to D&D Funding.

On December 21, 2018, Blue Dog filed a motion seeking approval of a settlement with the landlord. [ECF No. 169]. I approved that settlement on January 24, 2019. [ECF No. 184]. The

8

currently pending adversary proceeding by Blue Dog against Seyfarth Shaw was filed on February 26, 2019. *See* [Adv. Pro. No. 19-01029, ECF No. 1]. As an aside, I note that I had dismissed a prior adversary proceeding as premature. The only plaintiff in the adversary proceeding against Seyfarth Shaw in this Court was Blue Dog itself, which has since been replaced as plaintiff by the Liquidating Trustee.

After that time, on July 1, 2019, Blue Dog filed another amended list of its equity security holders. [ECF No. 204]. The new list said that 100 percent of the stock of Blue Dog now was owned by 399 Park Holding LLC. The statement was signed by Robert Powell, who identified himself as the authorized representative of 399 Park Holding LLC. A footnote to the declaration referred to the fact that in a prior court filing, Ms. Slavutsky had been listed as holding a 51 percent interest in Blue Dog and that YUHA Group had been listed as holding a 49 percent interest. The footnote continued to state that D&D Funding II LLC had acquired all of Ms. Slavutsky's shares, constituting "not less than" 51 percent of the equity in Blue Dog pursuant to a stock purchase agreement dated October 8, 2018, and that D&D Funding had later sold those shares to 399 Park Holding, LLC. Based on those dates, it appears that Ms. Slavutsky sold her stock in Blue Dog prior to the filing of a motion for approval of a settlement of the landlord litigation and prior to the effective date of the settlement that I approved.

The footnote further declared that 399 Park Holding believed that in fact Ms. Slavutsky had been the sole shareholder of Blue Dog and that 399 Park therefore now owned 100 percent of Blue Dog. It is not necessary to go into too much detail here except to note that there were later issues and disputes involving the YUHA Group that led to a settlement in 2020. Under that settlement, the YUHA Group confirmed that it owned no equity in Blue Dog, and confirmed that

9

399 Park Holding by virtue of its purchase of Ms. Slavutsky's interest was the sole owner of equity interests in Blue Dog.  [ECF Nos. 321 and 328].

In late 2019, Blue Dog proposed a plan of liquidation.  I confirmed the second amended version of the plan on January 23, 2020.  [ECF No. 271].  An affidavit in support of confirmation was submitted by Mr. Powell, who described himself as the manager of 399 Park Holding LLC and who described 399 Park Holding as the equity owner of Blue Dog.  [ECF No. 266].

The Plan that I confirmed included broad definitions of "Causes of Action" and of "Estate Actions" that belonged to Blue Dog and that were being transferred to the Liquidating Trust under the terms of the Plan.  *See* [ECF No. 257] at §§ 1.3.17 and 1.3.44.  The term "Trust Assets" was defined to include all of Blue Dog's property, including all Causes of Action and Estate Actions, including the so-called Seyfarth Action (*i.e.,* the adversary proceeding pending in this Court).  *See Id*. at § 1.3.92.  The Plan provided that the assets of Blue Dog would be administered by the Liquidating Trustee pursuant to a liquidating trust agreement.  *See* [ECF No. 257]. No causes of action were distributed to any current or former shareholders in general or to Ms. Slavutsky in particular, who at that point apparently was just a former shareholder of Blue Dog.  The Plan provided for the payment of creditor claims in the order of their priority under the Code and provided that holders of interest in Blue Dog would receive distributions only if cash remained after the payment of creditor claims. *Id.*

My Confirmation Order included a number of provisions that are relevant to the motion now before me.  In Paragraph 23 of the Confirmation Order, I confirmed that "[u]pon the Effective Date, the Liquidating Trustee shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all" of the causes of action that had been transferred to the trust, and that "all proceeds of such actions shall become property of the

10

Liquidating Trust." [ECF No. 271] at ¶ 23.  I also approved and issued an injunction pursuant to which the assets of Blue Dog were to be used "only in the manner set forth in this Plan," and I confirmed that such assets were not available for any other purpose.  *Id.* at p. 6 and ¶ 80.  In addition, I ordered that "all persons and entities who have held, hold, or may hold claims or interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtor or the Debtor's chapter 11 case" would be "precluded and permanently enjoined on and after the effective date from interfering with the use and distribution of the Debtor's assets in the manner contemplated by the Plan."  *Id.* at p. 6 and ¶¶ 80, 86.

The various conditions to the effectiveness of the Plan were satisfied and the Plan became effective on June 2, 2020.  [ECF No. 311].  The Liquidating Trustee then took over the litigation against Seyfarth Shaw and Mr. Berman, and a long period occurred during which the parties engaged in settlement and mediation sessions.

On February 21, 2021, however – unbeknownst to me -- Ms. Slavutsky filed a lawsuit in the Florida state court against Seyfarth Shaw and Mr. Berman.  I have now seen a copy of the complaint in that action.  The caption lists an additional Seyfarth partner as a defendant; his name is Mr. Adrian Zuckerman.  However, the complaint itself actually does not assert any claims against Mr. Zuckerman.

In the Florida complaint, Ms. Slavutsky contends that Seyfarth Shaw agreed to act as counsel to her; that it gave her bad advice; and that, as a 51 percent shareholder of Blue Dog, she was injured based on Seyfarth's alleged malpractice in the handling of Blue Dog's litigation with its former landlord.  The background allegations regarding the alleged malpractice, and practically the entirety of the first cause of action asserted by Ms. Slavutsky in the Florida Action, are substantially identical to the allegations in Blue Dog's action against Seyfarth Shaw.  Blue Dog's

11

own complaint obviously was a model for many of the underlying claims that were asserted in the Florida Action, though the Florida Action adds a number of allegations about Seyfarth Shaw's alleged duties to Ms. Slavutsky.

The complaint in the Florida Action is not crystal clear as to the damages sought by Ms. Slavutsky. However, it is quite clear that her primary claim is that she was injured in her capacity as a shareholder of Blue Dog because Seyfarth's representation of Blue Dog was flawed and because Seyfarth thereby prevented Blue Dog from pursuing a winning litigation strategy or from negotiating a better settlement. Those are the same injuries for which Blue Dog seeks recovery in the adversary proceeding that is pending before me.

I note that the Seyfarth Shaw firm named Ms. Slavutsky as a third-party defendant in the adversary proceeding that is pending before me. Ms. Slavutsky filed an answer in that adversary proceeding and did so a year and four months prior to the time she filed her complaint in the Florida Action. She did not assert any claims against Seyfarth Shaw relating to the matters that are at issue in the adversary proceeding along with the answer that she filed. Instead, she apparently elected to file them as an action in Florida instead of filing them in the litigation that had already involved the same substantial underlying sets of matters.

The Liquidating Trustee has now moved to enjoin Ms. Slavutsky from pursing the Florida Action. As I have already stated, Ms. Slavutsky has not filed a response, though the certificates of service that are on file show that she was served with the motion, and I have denied her request for an adjournment at the outset of this hearing.

It is very plain to me that at least most of the claims that Ms. Slavutsky is attempting to pursue are claims that belonged to Blue Dog and that now belong exclusively to the Liquidating Trustee. Ms. Slavutsky alleges that she was a shareholder of Blue Dog and that, in that capacity,

she was injured derivatively by reason of injuries primarily suffered by Blue Dog. More particularly, she claims she was indirectly injured as a result of Blue Dog's inability to win its lawsuit with its former landlord and/or by Blue Dog's inability to negotiate a better settlement. In that regard, Ms. Slavutsky's alleged injuries – namely, a reduction in the value of her interests as a shareholder or a reduction in the value of the cash she might have received from the corporation if it had been more successful – are just derivative of injuries that were directly suffered by Blue Dog itself. It is well settled that a shareholder does not have a direct cause of action in such circumstances. *See Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81, 89 (2d Cir. 2014). In such a case, the cause of action belongs to the corporation, not to the shareholder. *Id*.

Ms. Slavutsky's pleading in Florida seeks to avoid this result by alleging that Seyfarth was her counsel in addition to being Blue Dog's counsel. I am troubled by this because, at the time of Seyfarth's retention, Ms. Slavutsky herself filed an affidavit in the proceedings before me that confirmed that Seyfarth's undivided loyalty and duties were owed to Blue Dog. But it does not really matter. No matter how Ms. Slavutsky seeks to characterize the representation and the duties that were owed, the injury for which she primarily seeks redress is an injury to Blue Dog's litigation prospects. The injury for which she seeks redress is an injury inflicted on the entity that owned the litigation claim, which was Blue Dog, not Ms. Slavutsky.

The Second Circuit has recognized that formal labels are not conclusive in deciding who owns a claim, since plaintiffs often try to plead their ways around obstacles to the assertion of claims. *See Tronox Inc. v. Kerr-McGee Corp. (In re Tronox Inc)*, 855 F.3d 84, 100 (2d Cir. 2017). For that reason, the Court of Appeals has held that where an individual seeks recovery for an alleged injury, and where that alleged injury to the individual consists of the secondary effect on

13

the individual claimant of an injury that was done directly to another party, then the asserted claim belongs to the party who was directly injured and not to the claimant who alleges the secondary injury. Both the *Tronox* decision and the *Madoff* decision, each of which I have cited, clearly so hold.

I have no trouble under these and related decisions in finding that Ms. Slavutsky's claims are just derivative claims to the extent that they are based on actions by the defendants that allegedly inhibited or damaged the litigation that Blue Dog was pursuing against its former landlord. Blue Dog, not Ms. Slavutsky, was the party in that case. Ms. Slavutsky claims that she might have received a share of litigation recoveries or of profits if Blue Dog had maintained operations, but those interests of hers as a shareholder are entirely derivative of Blue Dog's interest, and Ms. Slavutsky's injuries in that regard are entirely derivative of the injuries allegedly suffered directly by Blue Dog. The claim belongs to Blue Dog, not to Ms. Slavutsky.

Furthermore, Ms. Slavutsky's interests as a shareholder in the proceeds of any claims owned by Blue Dog were subject to the Bankruptcy Code, and were subordinate to the interests of Blue Dog's creditors. How the proceeds of Blue Dog's claims were to be used and distributed is governed by the confirmed Plan in Blue Dog's case, under which all rights to the claim were assigned to the Liquidating Trust. It appears that Ms. Slavutsky sold the stock in Blue Dog and therefore sold her rights as a shareholder to receive any funds from Blue Dog.

Ms. Slavutsky's cause of action in Florida in effect seeks to exercise control over a claim that belonged to the estate and that was transferred to the Liquidating Trust, and it involves an effort to appropriate that claim for her own use and benefit. Under the terms of the Bankruptcy Code, under the Plan and under my prior Confirmation Order it is the Liquidating Trust, not Ms. Slavutsky, that has the exclusive right to pursue Blue Dog's claims and to negotiate with the

Defendants over the terms of a potential resolution of those claims. By asserting her own claims, Ms. Slavutsky has interfered with that exclusive right in ways that violate the terms of the Plan and violate the terms of my Confirmation Order, including the injunctions that I issued.

Accordingly, the first cause of action asserted by Ms. Slavutsky, which alleges primarily injury to Blue Dog in the conduct of its litigation against this landlord, must be enjoined. That claim does not belong to her and cannot be asserted by her.

As to other claims: it is entirely unclear to me whether Ms. Slavutsky claims to have suffered any injuries apart from injuries that are derivative of the injuries suffered by Blue Dog. I pause to emphasize once again that no matter how Ms. Slavutsky seeks to characterize her claims, or seeks to characterize the duties allegedly owed by Seyfarth Shaw, any effort by her to recover by reason of injuries that she allegedly suffered that are merely derivative of the injuries allegedly suffered by Blue Dog itself is simply barred.

Ms. Slavutsky mentioned during the hearing today that she was a guarantor of obligations of Blue Dog, but she has not alleged that any actions by Seyfarth Shaw caused her to pay something on that guaranty that she wouldn't have otherwise had to pay. In fact, she acknowledged she did not have to pay anything under that guaranty. The ultimate terms of the settlement with the landlord involved a release of any claims the landlord had against Blue Dog and a payment by the landlord to Blue Dog, in effect leaving Ms. Slavutsky with no obligation under her guaranty.

What I do not know is whether there is anything in the Florida Action by which Ms. Slavutsky claims that she suffered any direct injuries of her own. I have already noted that she agreed personally to pay the fees of Seyfarth Shaw. I do not know if she seeks to recover any of the fees she paid on the ground that they were not earned, for example. And I do not know, and nobody has argued to me, why that claim would belong to Blue Dog as opposed to Ms. Slavutsky.

Indeed, one of my prior rulings of the case was that Seyfarth Shaw could not claim any rights against Blue Dog with respect to unpaid fees, because the only obligation to pay those fees belonged to Ms. Slavutsky.

If Ms. Slavutsky suffered injuries that were not merely derivative of injuries allegedly suffered by Blue Dog – and again, that is something she has not really clearly identified – then she might have a right to pursue such claims. However, even if that were the case, it is quite apparent to me that those were compulsory counterclaims that had to be filed, if they were to be pursued at all, in the adversary proceeding that is already pending before me. Ms. Slavutsky was named as a third-party defendant by Seyfarth Shaw and she filed her Florida Action against Seyfarth Shaw only after she had filed an answer to the third-party complaint that Seyfarth Shaw had filed against her in the adversary proceeding before me. Obviously, the claims arise out of the exact same underlying facts and circumstances and they were compulsory counterclaims pursuant to Rule 13(a)(1)(A) of the Federal Rules of Civil Procedure, made applicable to the adversary proceeding by Rule 7013 of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Civ. P. 13(a)(1)(A); Fed. R. Bankr. P. 7013. Ms. Slavutsky's continued pursuit, in Florida, of claims that could only be asserted as compulsory counterclaims in this adversary proceeding would create a multiplicity of actions, waste resources, unduly burden the litigation process, and (most importantly) create uncertainties among the defendants as to what claims they face in each court. An injunction is appropriate to prevent Ms. Slavutsky from pursuing those claims in Florida. *See, e.g.*, *National Equipment Rental, Ltd. v. Fowler*, 287 F.2d 43 (2d Cir. 1961) (confirming that an injunction may be issued to prevent the litigation, in a different court, of a claim that is a compulsory counterclaim in a prior action, so as to protect the jurisdiction of the court in the earlier filed action); *see also Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26 (2d Cir. 1990); *Am. Home Assur. Co. v. Ins.*

16

*Corp. of Ireland, Ltd.*, 603 F. Supp. 636 (S.D.N.Y. 1984); *Horn & Hardart Co. v. Burger King Corp.*, 476 F. Supp. 1058 (S.D.N.Y. 1979).

I do not think I need to reach any of the other issues raised by the Liquidating Trustee. I will enjoin Ms. Slavutsky and her counsel from taking further action in the Florida Action, and I will instruct them to dismiss that action. I will also enjoin them from pursuing in any court claims that are merely derivative of the injuries allegedly suffered by Blue Dog itself, including without limitation the first cause of action asserted in the Florida Action. If Ms. Slavutsky thinks she has personal claims against Seyfarth Shaw and Mr. Berman or other partners of Seyfarth Shaw that are not derivative of Blue Dog's own claims, those have to be asserted in the adversary proceeding before me. If she seeks permission to do so as compulsory counterclaims, I will consider such a request if and when such a request is made. But to be very clear, a shareholder has no right to pursue claims and to claim damages based on the idea that if the corporation had not been injured, then the shareholder would have been better off. It does not work that way, either inside or outside a bankruptcy.

I do not see any need for contempt sanctions or other relief in addition to what I have just described. I think the injunction should suffice. A separate Order will be entered that reflects the relief set forth above.

Dated: New York, New York
      February 22, 2022

                                    **s/Michael E. Wiles**
                                    United States Bankruptcy Judge